WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charlotte Gibson, | No. CV-16-00166-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| US Collections West Incorporated, | |
| Defendant. | |

Pending before the Court are Plaintiff Charlotte Gibson's and Defendant US Collections West Incorporated's ("US Collections") cross motions for summary judgment, (Docs. 25 & 30). For the following reasons, the Court grants Plaintiff's motion and denies the Defendant's motion.[1]

**BACKGROUND**

Charlotte Gibson owed money to North Valley Endodontic for medical expenses. (Doc. 25-2 at 2.) At some point, she fell behind on payments and US Collections began collection activity to recover her account's balance. (*Id.*) On September 22, 2015, Ms. Gibson wrote a letter informing US Collections that she refused to pay. (*Id.*) U.S. Collections received this notice on September 25, 2015. (*Id.*)

Despite receiving this letter, US Collections concedes that it sent two additional debt-collection letters to Ms. Gibson. It asserts, however, that these communications

---

[1] The Defendant's request for oral argument is denied because oral argument will not aid the Court's decision. *See Lake at Las Vegas Invrs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir.1991).

were sent in error after a clerk, Kay Kasey,[2] who was trained to give refusal to pay letters to a manager to handle, mistakenly placed Ms. Gibson's refusal letter into a box for dispute letters. (Doc. 30 at 3, Doc 32 at 1.)

Ms. Gibson filed the instant suit, alleging a violation of the Fair Debt Collection Practices Act ("FDCPA"). (Doc. 1.) US Collections concedes that it violated the FDCPA but asserts that it should not be held liable because the violation was the result of a bona fide error, which is an affirmative defense under the statute. (Doc. 30.)

**DISCUSSION**

**I. Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Although "[t]he evidence of [the non-moving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot avoid summary judgment by relying solely on conclusory

---

[2]Ms. Kasey is also known as Bonnie McIntosh. (Doc. 32 at 1.)

allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment," and evidence must be authenticated before it can be considered. *Orr v. Bank of Am.*, 285 F.3d 764, 773–74 (9th Cir. 2002).

## II. Analysis

The FDCPA imposes strict liability on debt collectors for continuing to contact a consumer once the "consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer." 15 U.S.C. § 1692c(c). 15 U.S.C. § 1692(e); *See also Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008) (affirming that "the FDCPA imposes strict liability"). Although the FDCPA imposes strict liability in such cases, debt collectors may seek to demonstrate that their actions were the result of a "bona fide error" to avoid liability. 15 U.S.C. § 1692k; *see Reichert*, 531 F.3d at 1005 (explaining that the bona fide error defense "provides a narrow exception to strict liability.") (internal quotation marks omitted). "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *Reichert*, 531 F.3d at 1005. To establish the defense, the debt collector must establish, by the preponderance of the evidence, that "(1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

### A. US Collections Provided No Evidence that it Utilized Procedures Reasonably Adapted to Avoid Mistakes in the Handling of Consumer Mail.

To utilize the bona fide error defense as a shield, the defense must establish that it maintained procedures "designed to avoid discoverable errors." *Reichert,* 531 F.3d at 1007. As this Court previously noted the Ninth Circuit uses a two-step process to determine whether the "procedures" prong may have been satisfied. *Reichert,* 531 F.3d at 1006. First the debt collector must " '[maintain]—i.e., actually [employ] or [implement]—procedures to avoid errors.'" *Id.* (quoting *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)). Second the procedures must be "'reasonably adapted' to avoid the *specific error* at issue." *Id.* "To qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors." And, further "[i]f the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of "procedures reasonably adapted to avoid any such error" must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Id.* at 1007. Therefore, a defendant must assert and explain how a procedure or policy is tailored to avoid the specific mistake at issue to take advantage of the bona fide error defense.

In the case at hand, the undisputed record reflects that Kay Kasey, the US Collections clerk, filed Ms. Gibson's refusal letter as a dispute rather than giving it to a manager as a refusal letter. (Doc. 32-2 at 4.) At the time of the incident, US Collections asserts that it had an unwritten policy that clerks were not to engage with accounts once an individual refused to pay.[3] (Doc. 32-3 at 3.) If a letter reflected a dispute, "it was to go into a dispute box." (*Id.*) If a letter reflected a refusal to pay, it "should go to a

---

[3] At some point after this incident, this policy was written down. (Doc. 32-3 at 3.) However, contrary to Ms. Gibson's representations in her briefing, US Collections' President, Donald Darnell, did not testify that US Collections did not have a policy related to refusal to pay letters. (Doc. 33 at 6; Doc. 32-3 at 3.)

manger to have the manager handle it and a copy go to the collector." (*Id.*) The manager then flagged the file to ensure that no further correspondence occurred. (*Id.*)

This practice, while presumably sound practice under the statute itself, merely implements the statute and is not a procedure designed to discover avoidable errors. The only reference to the clerks' initial sorting of mail in this case is US Collections' assurance that it generally trains clerks on how to sort mail. (*See* Doc. 32.) This is "only a conclusory declaration stating that it maintained procedures," and in any event, is not a procedure designed to discover errors. *Reichert*, 531 F.3d at 1007. As this Court previously observed in noting the unavailability of the bona fide mistake defense in a similar case involving the mishandling of consumer correspondence:

> [Defendant] knows that the proper handling of consumer mail and communications is fundamental to ensuring the accuracy of the . . . debtor accounts. For example if a 'cease and desist' letter is lost, the paralegal will never enter the appropriate code into the account to block further communications with the debtor. This failure may led to FDCPA violations, which is exactly what happened in [Plaintiff's] case.

*Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 1000 (D. Ariz. 2010). Further this Court noted "there is no way to confirm that a piece of mail was properly received and handled during the [relevant] period. During this time, [Defendant] had no policy or procedure in place to verify whether the proper notations for a consumer's letter are actually entered by the paralegal." *Id.* As was the case in *Isham,* so here there are no such procedures designed to avoid errors in place.

As did the Defendant in *Isham*, US Collections also asserts that it "gives a test twice yearly on the FDCPA to its collectors[,] who must maintain a minimum grade of 80%," hosts meetings with supervisors to ensure compliance with the FDCPA, and distributes memos to clerks explaining how to handle disputes. (Doc. 30 at 5; *see* Doc. 32 at 2–4.) These are general policies aimed at FDCPA compliance, but they do not remedy the specific problem at issue here, namely the mishandling of mail. *See Isham*,

738 F. Supp. 2d at 999 (finding that no reasonable jury could find that the defendant was entitled to the bona fide error defense, "[d]espite [the defendant's] showing of elaborate FDCPA compliance and office procedures," because it "fail[ed] to demonstrate procedures 'reasonably adapted' to the specific error that caused it to violate the FDCPA in Isham's case—mishandling and loss of consumer mail"). US Collections failed to present evidence of a procedure or policy tailored to address the specific error at issue here, and thus it failed to meet its burden of proof to establish the bona fide error defense.

## CONCLUSION

Both parties stipulate to the material facts involved in this case. US Collections concedes that it violated the FDCPA by continuing to contact Ms. Gibson.[4] Its only defense for the violation was its assertion of the bona fide error defense. (Doc. 30 at 3.) Even taking these facts in a light most favorable to U.S. Collections, it is not entitled to the protection of the bona fide error defense in this case. Therefore, as a matter of law, the Court finds that Plaintiff Gibson has met all of the essential elements of her FDCPA liability claim and is therefore entitled to damages. Further, the Court finds that U.S. Collections failed to satisfy the requirements of the bona fide error defense, and therefore will not be excused from FDCPA liability as a matter of law.

///

///

---

[4] US Collections raises an additional standing argument for the first time in its reply brief. This argument is untimely, as the Plaintiff did not have a chance to respond to the argument. *See United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."). However, the Supreme Court's recent opinion in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016), does not eliminate every statutory cause of action created by Congress. *See Deschaaf v. Am. Valet & Limousine Inc.*, No. CV-16-03464-PHX-GMS, 2017 WL 610522, at *2 n. 4 (D. Ariz. Feb. 15, 2017) ("Of course, Congress can create obligations and remedies that provide appropriate persons standing to sue in federal court."). US Collections concedes that it continued to contact Ms. Gibson after receiving her formal refusal to pay in violation of the FDCPA. (Doc. 30 at 3.) This is not a mere procedural violation; this is a harm that negatively impacted Ms. Gibson in a particularized and concrete way.

**IT IS THEREFORE ORDERED GRANTING** Ms. Gibson's Motion for Summary Judgment, (Doc. 25), on liability.

**IT IS FURTHER ORDERED DENYING** Defendant U.S. Collections Cross-Motion for Summary Judgment, (Doc. 30), because it failed to meet its burden under the bona fide error defense.

**IT IS FURTHER ORDERED** setting a Status hearing for **May 19, 2017 at 10:00 a.m.** in Courtroom 602, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151. The parties shall be ready to discuss how they wish to proceed on the issue of damages.

Dated this 8th day of May, 2017.

_____
Honorable G. Murray Snow
United States District Judge